**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **KAREN RITTER,** <br><br> ***Complainant*** <br><br> **V.** <br><br> **SUEBA USA CORPORATION D/B/A BROADSTONE VISTA RIDGE, SOUTHAMPTON MANAGEMENT, INC., HOOVER SLOVACEK L.L.P. & HAL WOLFF** <br><br> ***Respondents*** | § | **CASE NO. 4: 15-CV-00870** <br><br> **JURY TRIAL REQUESTED** |

**COMPLAINT**

**COMES NOW** Complainant, Karen Ritter, and files this Complaint against the Respondents Broadstone Vista Ridge, Southampton Management Inc., Hoover Slovacek L.L.P. and Hal Wolff on the following grounds:

**I.**

**JURISDICTION & VENUE**

1. The Court has original jurisdiction over the action pursuant to *42 U.S.C. § 3604* and *42 U.S.C. § 3617*, because this lawsuit was brought under the Fair Housing Act, *42 U.S.C. § 3601* et seq., and supplemental jurisdiction pursuant to *28 U.S.C. § 1367*.

2. Venue is proper in the Eastern District of Texas, Sherman Division, under *28 U.S.C. § 1391*(b) because the claim arose in this judicial district.

3. Complainant Karen Ritter is an individual who resides in Denton County, Texas.

4. Complainant Karen Ritter was at all times material, and continues to be a person with a disability, as defined by *42 U.S.C. §12102*, as she suffers from Obsessive Compulsive Disorder (OCD). As a result of this condition, she has a compulsive need to keep her surroundings clean and organized.

5. Complainant Karen Ritter is substantially limited in a major life activity therefore suffers from disability as defined by law.

6. These conditions substantially affect the living activities of Ms. Ritter.

7. Respondent, Sueba USA Corporation d/b/a Broadstone Vista Ridge ("BVR") is a corporation with its principal place of business in Harris County, Texas. A waiver of summons pursuant to FED. R. CIV. P. 4 is being requested.

8. Respondent Southampton Management, Inc. ("SMI") is a is a corporation with its principal place of business in Harris County, Texas. A waiver of summons pursuant to FED. R. CIV. P. 4 is being requested.

9. Respondent, Hoover Slovacek L.L.P. ("HS") is a Texas limited liability partnership that has agreed to waiver of summons pursuant to FED. R. CIV. P. 4.

10. Respondent Hal Wolff ("Wolff") is an individual who has agreed to waiver of summons pursuant to FED. R. CIV. P. 4.

## II.

## FACTS

11. On May 7, 2012 Complainant signed a lease with Sueba USA dba Broadstone Vista Ridge (BVR) and on June 24, 2012, Complainant took possession of unit 715 at BVR which was managed by Southampton Management, Inc. (SMI). From that day, until

the date that Ms. Ritter moved out, BVR/SMI contracted with a third-party landscaping company to maintain the lawn and other foliage on the property. This company used a leaf blower to attempt to remove debris from their work, which collected in the concrete breezeway directly in front of Complainant's leased unit. She followed behind the landscaping company and, with a hose, sprayed off the debris the landscapers had blown into the common area – but only immediately in front of her unit.

12. Complainant engaged in this activity to avoid exacerbating her disability, and felt obsessively compelled to clean approximately a 7x7 sq. ft area of concrete directly in front of the entrance to her apartment. After spraying down the breezeway, she used two large beach towels to sop up any excess water that might have accumulated in her immediate area, never leaving the area until it was fully dried.

13. This activity was not precluded in any way shape or form under the terms of Complainant's lease agreement with Respondents or any addendum thereto.

14. Complainant engaged in this activity once week, every week, without fail during her tenancy at BVR (and everywhere she has lived as an adult before and after her tenancy at BVR).

15. When Complainant toured BVR prior to entering the lease, she disclosed to the property management that she suffers from OCD, which requires her to live in a home that is cleaner that the ordinary public generally requires. She specifically discussed spraying down sidewalks. She has done so at every residence she has ever had, including her current apartment complex, and no other rental property has had any problem or liability concern with this activity, and no damages of any kind have resulted from water on outdoor first-floor concrete.

16. Employees of SMC which manages the BVR property specifically affirmed to Complainant that cleaning the common areas outside of her apartment in this manner was not prohibited and would not be a problem. Based on this assertion, Complainant rented a first-story unit on the property.

17. From June 2012 to January 2015, Complainant continued to wash her breezeway on a weekly basis to clean up behind the landscapers, during the daytime and on a weekday when the on-site office was open. Employees of SMC frequently walked the property and were aware of the breezeway washing, but no complaints were ever made by tenants, management, or any other person for over two years.

18. On January 30, 2015, Complainant was approached by Respondent SMC's on-site managers, Matt, who told her that somebody who visited from corporate didn't like her washing the breezeway, but that furnishing a letter confirming her OCD diagnosis should resolve the issue. Matt was already familiar with Ritter's disability and associated behaviors, and was evidently sure, himself, that this would ultimately be a "non-issue" for Complainant.

19. On February 1, 2015, Complainant provided SMC / BVR a letter from a healthcare professional confirming her OCD diagnosis. Hearing nothing from the office in response to her letter, Complainant then received written notice from the attorney for SMC/BVR, Respondent Hal Wolff (acting in the course and scope of his employment with Respondent Hoover Slovacek, L.L.P.) refusing to provide her with a reasonable accommodation to a non-existent or inherently discriminatory rule. In doing so, Wolff – an attorney—deliberately misled Complainant as to her rights under the FHA and other federal and state laws.

20. Wolff stated that the original Ritter diagnosis was insufficient because it was outdated, or too old. Wolff refused accommodations (which weren't really necessary in the first place, as Complainant's behavior did not violate any stated rule or procedure of the premises) despite the fact that Complainant informed him that OCD is incurable, and is a disability that is only diagnosed once. Respondents continued to demand diagnostic letters from multiple other providers, and, on receipt, continued to deny Ritter's request.

21. On April 6, 2015, Complainant notified Wolff that she filed a complaint with HUD/FHA, by forwarding her allegations to his e-mail address. Wolff then engaged Complainant in negotiations requiring her to withdraw her claims.

22. In response to notice of her complaint of discrimination to HUD, Wolff provided Complainant with only two options: to either move to a different unit, which would increase her rent by over $400 a month, or to move entirely away from the community she made into a home over several years. Respondents' actions constitute both constructive eviction under the Texas Property Code, as well as retaliation under state and federal housing and anti-discrimination laws.

23. Having been misled on multiple occasions by Wolff (acting in his capacity as authorized representative of BVR / SMI and in the course and scope of his employment with HS), and believing that she was (a) violating some rule or policy of the premises (which she was not); (b) required to ask for a "reasonable accommodation" (which she was not); (c) that BVR/SMI were not required to make reasonable accommodations to disabled tenants with respect to the common areas of the complex (which they are); and that she had no reasonable alternative to being evicted, Complainant vacated her home, suffering extreme emotional distress as a result.

## III.

## FAILURE TO MAKE REASONABLE ACCOMMODATIONS FOR A PERSON WITH A DISABILITY

***42 U.S.C. § 3604*(f)(3)**

24. Complainant repeats and realleges the allegations contained in paragraphs 1 through 23 above as though set forth herein.

25. Discrimination is defined as the refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling.

26. It is well settled that OCD is a disability that is, here, inextricably intertwined with Complainants need to keep a tidy breezeway in front of her home.

27. Respondents' sudden and arbitrary refusal to allow Complainant to continue to wash the common area in front of the entry to her apartment or, in the alternative, make reasonable accommodations for Complainant, is discriminatory and unlawful.

28. Such actions by Respondents were in total and reckless disregard Complainant's rights and indifferent to her well-documented medical condition, despite Respondent's eventual recognition of Complainant's disorder as a disability.

29. As a result of this discrimination, Complainant has actual damages, psychological distress, mental anguish, grievous emotional distress, worry, frustration, humiliation, and loss of capacity for the enjoyment of life. These losses are either permanent or continuing and Complainant will suffer these losses in the future.

## IV.

## DISCRIMINATORY TERMS & POLICIES IN CONNECTION WITH THE DWELLING
## *42 U.S.C. § 3604*(f)(2)

30. Complainant repeats and realleges the allegations contained in paragraphs 1 through 23 above as though fully set forth herein.

31. Respondents are liable under this statute for assertions that a rule existed, as of January 2015, only for Complainant and only as to her disability-related behavior of spraying down her breezeway. This rule limited in her use and enjoyment of the conditions and privileges in connection of her dwelling by limiting her ability to enter and leave the premises.

32. The rule constitutes discrimination of the terms, conditions, or privileges to enjoy the premises in excess of what was required of any other person, and was solely due to her disability.

33. Such rules were solely made for the intrusive and prurient interests of the agents and employees of Respondents to facilitate the eventual removal of Complainant from her unit.

34. Such actions by Respondents were in total and reckless disregard of Complainant's rights and indifferent to the medical and conditions or needs of Complainant, and indifferent to the property rights of Complainant.

## V.

## DISCRIMINATORY PRIVILEGES IN CONNECTION WITH THE DWELLING
## *42 U.S.C. § 3604*(f)(2)

35. Complainant repeats and realleges the allegations contained in paragraphs 1 through 23 above as though fully set forth herein.

36. As a result of the denial of a reasonable accommodation, was limited in her use and enjoyment of the conditions and privileges in connection of her dwelling by limiting her ability to enter and leave the premises.

37. Further, Respondents' unlawful inquiries as to the nature or severity of Complainant's disability beyond which was necessary to afford an accommodation constitutes discrimination of the terms, conditions, or privileges to enjoy the premises in excess of what was required of any other person, and was solely due to her disability.

38. Such inquiries were solely made for the intrusive and prurient interests of the agents and employees of Respondents to delay and discourage efforts to obtain an accommodation (which, once again, wasn't even necessary in the first place).

39. Such actions by Respondents were in total and reckless disregard of Complainant's rights and indifferent to the medical and conditions or needs of Complainant, and indifferent to the property rights of Complainant.

40. Further, as a direct and proximate result of Respondents' refusal to accommodate Complainant and continued inquiry into her disability, Complainant has actual damages, psychological distress, mental anguish, grievous emotional distress, worry, frustration,

and humiliation, loss of capacity for the enjoyment of life. These losses are either permanent or continuing and Complainants will suffer these losses in the future.

## VI.

## RETALIATION IN VIOLATION OF THE FAIR HOUSING ACT

### *42 U.S.C. § 3617*

41. Complainant repeats and realleges the allegations contained in paragraphs 1 through 23 above as though fully set forth herein.

42. Respondents have engaged in numerous malicious acts with the intent to coerce, intimidate, retaliate, threaten, or interfere with Complainant due to the fact that she chose to exercise her rights under the Fair Housing Amendments Act. Wolff (acting in his capacity as authorized representative of BVR / SMI and in the course and scope of his employment with HS), interfered with Complainant's enjoyment of the premises through misleading Complainant, leading her to believe that she was violating rule or policy of the premises that did not exist, continuously denying Complainant's right to enjoyment of the premises. Wolff holds himself out to be an expert in Landlord/Tenant law and fair housing, but refused to acknowledge the plainly obvious causal connection between Complainant's disability and her behavior of regularly washing the breezeway. These acts by Wolff, on behalf of BVR and SMI, required Complainant to permanently move out of the unit she leased in 2012, and she did so pursuant to Defendant Wolff's demands.

43. These retaliatory actions by Respondents against Complainant include, but are not limited to:

a. Denying Complainant full enjoyment and use of the premises;

    b. Evidently enacting new restriction at the BVR premises solely aimed at denying Complainant an accommodation for her disability;

c. Demanding intrusive information from Complainant different from any other tenant to justify an activity that was not prohibited under any of the rules of the premises or lease terms.

44. Respondents actions were intentional and in total and reckless disregard of Complainants' protected rights.

45. As a result of this harassment, retaliation and discrimination, Complainant has actual damages, psychological distress, mental anguish, grievous emotional distress, worry, frustration, and humiliation, loss of capacity for the enjoyment of life. These losses are either permanent or continuing. Complainant will suffer these losses in the future.

## VII.

## CONSTRUCTIVE FRAUD

46. By willfully misrepresenting to Complainant that she would need to request and receive an accommodation in order to clean the area in front of her apartment entrance, and by misrepresenting to Complainant that her landlord had no duty to make a reasonable accommodation to allow her use and enjoyment of the common areas of the premises, Wolff, acting on behalf of BVR & SMI and in the course and scope of his employment with HS, committed fraud.

47. Despite Wolff's misrepresentations, no rules prohibited Complainant's activities, either in the lease or otherwise. She engaged in these activities for years without consequence or complaint from either fellow residents or management. Respondent Wolff's representation to Riter that she needed to make a request for an accommodation pursuant to the statute, and the lease was intentionally misleading, indicating that Ritter

was not required to strictly comply with the inherently discriminatory rule.

48. The "rule" prohibiting Complainant Ritter from washing her breezeway was suddenly created to apply exclusively to Complainant; due to her disability.

49. The lease agreement and Texas law both require that any change in Multi-Unit Apartment rules or policies must apply equally as to all tenants, and tenants must be given a 30-day written notice of these changes. No such policy was ever changed or implemented at BVR. From the date Complainant signed her lease in 2012 to date, no written notice of the new "rule" has been given to any tenant on the premises.

50. Contrary to Wolff's ongoing representations to Complainant that her activities were prohibited, there was in fact no existing rule or policy that Complainant Ritter needed to request to modify to reasonably accommodate Complainant's needs. Thus, Wolff's actions constitute fraud.

51. Wolff, acting as authorized agent of BVR and SMI and in the course and scope of his employment with HS, committed fraud in that he made material misrepresentations to Complainant as detailed herein, the representations were false at the time they were made, Wolff knew they were false or made them recklessly without any knowledge of the truth and as a positive assertion, Wolff made the representations with the intent that Complainant should act upon them, Complainant did in fact act in reliance on the false representations; and Complainant thereby suffered injury. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 54 Tex. Sup. Ct. J. 822, 830 (Tex. 2011) ; *Aquaplex, Inc. v. Rancho la Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam); *De Santis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990) ; *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 185 (Tex. 1977).

**VIII.**

**STATUTORY FRAUD**

TEX.BUS. & COM. CODE § 27.01

52. In addition to and without waiving Complainant's constructive fraud claim, Wolff's misrepresentation, as described in Complaint Paragraph VI, these actions also constitute statutory fraud in violation of TEX. BUS. & COM. CODE § 27.01. Respondent defrauded Complainant by inducing her to sign an agreement to forfeit her contractual and legal rights.

53. A person who makes a false representation or false promise with actual awareness of the falsity thereof commits fraud in violation of TEX. BUS. & COM. CODE § 27.01 and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness.

54. A person who (1) has actual awareness of the falsity of a representation or promise made by another person and (2) fails to disclose the falsity of the representation or promise to the person defrauded, and (3) benefits from the false representation or promise commits fraud and is liable to the person defrauded for exemplary damages. Actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness. Complainant specifically seeks exemplary damages as redress for fraudulent acts by all Respondents herein.

## IX.

## CONSTRUCTIVE EVICTION

55. Respondents suddenly enacted a discriminatory, unwritten policy directed solely at Complainant which interfered with her enjoyment of the premises, then required Complainant to choose between two unreasonable options for continued residency on the premises under threat of an eviction (that would have been wrongful in and of itself). Not only did Ritter provide her doctor's notes to meet Defendants demands, she also proposed numerous distinct, affordable, and reasonable accommodations and indicated clearly that she was willing to bear the cost.

56. Each of the options presented to Complainant by Respondents were untenable and unnecessary, resulting in Complainant reasonably believing that if she did not vacate voluntarily and permanently abandon her well-established home and family-like neighbors, she would be evicted.

57. Complainant specifically seeks punitive damages as redress for intentional constructive eviction by all Respondents herein.

## X.

## DTPA VIOLATION

TEX. BUS. & COM. CODE § 17.46, et seq.

58. Without waiving other claims, in the event that Respondents claim that the "rule or policy" against cleaning the breezeway appurtenant to her apartment at BVR was actually a long-standing policy that applied to all tenants and was not adopted solely to deprive Complainant the enjoyment of the premises on the basis of her disability,

Complainant alleges that Respondents BVR and SMI acted in violation of the Texas Deceptive Trade Practices Act, which applies to all lease agreements. Respondents caused Ritter significant mental anguish, and violated the DTPA intentionally by deliberately misinforming Ritter of her rights under the lease and applicable law.

**WHEREFORE**, Complainant, COMPLAINANT RITTER, demands judgment against Respondents for her damages, to ensure that discrimination in violation of the Fair Housing Acts do not occur in the future, and to prevent discrimination to other persons based upon disability in the future as follows:

a. That the Court declare that the actions of the Respondents violated the Fair Housing Amendments Act by discriminating against persons with disabilities;

b. That the Court enjoin Respondents from discriminating against Complainants or any other person, because of because of their disability;

c. That the Court enjoin Respondents all to establish objective policies and procedures to permit an accommodation for a person with a disability;

d. That the Court enjoin Respondent SMI to ensure that each and every residential property managed by Respondent SMI ensure that objective policies and procedures are available and enforced that permit an accommodation for a person with a disability;

e. An award of appropriate compensatory and punitive damages to Complainant, against Respondents to compensate them for their actual damages and for the humiliation, embarrassment and emotional distress cause by the Respondents' discriminatory actions;

f. That the Court declare that the Respondents' acts were willful and wanton and in reckless disregard of the Complainants' civil rights under law;

g. Order Respondent BVR to provide notice to all tenants of their rights under the Fair Housing Act, including their right to have accommodations or modifications if they have a disability;

h. Order Respondent SMI to provide notices to all residents of all properties in which they manage of rights under the Fair Housing Act including their right to have accommodations or modifications if they have a disability;

i. Order that the Respondents instruct all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently managed and/or controlled by Respondents, of the terms of the Court's Order and the Fair Housing Act, Fair Housing Act and implementing regulations;

j. Order that the Respondents shall maintain for inspection by Complainant and all other tenants or owners at its condominium offices, copies of the Fair Housing Act, Fair Housing Amendments Act and implementing regulations;

k. Find that Complainants are entitled to actual, punitive, and exemplary damages, an award of attorneys' fees and costs, and reserve ruling as to the amounts and the applicable multiplier until the conclusion of the trial on this matter;

l. And grant any other such relief as this Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Respectfully submitted,

**HINDMAN/BYNUM, P.C.**

/*S*/ Michael J. Hindman
Michael Hindman
State Bar No. 24000267
Michael.hindman@hindmanbynum.com
5005 Greenville Ave., Suite 200
Dallas, Texas 75201
Phone No. (214) 941-4611
Fax No. (469)906-2340
**ATTORNEY FOR COMPLAINANT**